The first case on our call this morning, which is agenda number five, that is a press appeal numbers 127464 and 127487, the cases have been consolidated. The name of the case is Martin Hawth versus, among others, Brendan Kelly, etc. There's been some discussion as to how time should be split here. I think the parties have come to an agreement that the counsel for Brendan Kelly, etc. will have 18 minutes and the counsel for the Hampshire Police Department will have two minutes. Mr. Koss will have the full 20 minutes. And then in rebuttal, 10 minutes will be distributed to the appellees. Okay. With that, counsel, are you prepared to proceed in the first argument? Good morning, and may it please the Court. I am Assistant Attorney General Kayla Schoeneberg, and I represent the State Defendant's Appellant's Crossed Appellees. Mr. Koss filed a complaint in the Circuit Court alleging that the Sex Offender Registration Act, the Sex Offender Community Notification Law, and the residency restriction of the Illinois Criminal Code, which prohibits child sex offenders from residing within 500 feet of a home daycare, violated several of his fundamental constitutional rights. As to Mr. Koss' substantive due process and equal protection claims, the Circuit Court correctly determined that Mr. Koss failed to allege that the residency restriction implicated a fundamental right. But it incorrectly concluded that the residency restriction failed to satisfy the highly deferential rational basis test. The State has a legitimate and, indeed, a compelling interest in protecting children. And creating space between where a child sex offender may reside and where children are known to congregate is reasonably related to that interest. Moreover, to the extent the Circuit Court determined that the statute was unconstitutional as applied to Mr. Koss, it did so without any evidence in the record upon which it can make factual findings. Otherwise, the Circuit Court correctly dismissed Mr. Koss' other claims. On appeal, Mr. Koss appears to primarily focus on his procedural due process and ex post facto claims. First, with regard to the procedural due process claim, Mr. Koss failed to allege a constitutionally protective liberty or property interest which would entitle him to due process protections. Moreover, the process which Mr. Koss seeks, a process by which he could establish that he is not likely to reoffend, is irrelevant to his registration requirement and to the residency restriction, as those are imposed by virtue of his conviction. And as to Mr. Koss' ex post facto claim, that fails because the statutory scheme here does not constitute punishment. Turning first to Mr. Koss' substantive due process claim. In the Circuit Court, Mr. Koss alleged a variety of ways in which he believed the residency restricted implicated his fundamental rights. Turning first to his allegation that the residency restriction implicates a fundamental right to raise and care for his children. Of course, this court and the United States Supreme Court have recognized that individuals have a fundamental right in raising and caring for their children. But that right includes an individual's ability to make decisions about the care, custody, and control of their child and to direct the upbringing and education of their children. The residency restriction here does not impact those rights at all. Mr. Koss is still allowed to make decisions regarding the care, custody, and control of his children and to make decisions regarding their upbringing and their education. Relatedly, Mr. Koss alleged that the residency restriction implicates a fundamental right to establish a home. A very similar argument was rejected by the Seventh Circuit Court of Appeals in the Vasquez v. Fox case. In that case where the Seventh Circuit analyzed the same residency restriction at issue here, prohibiting child sex offenders from residing within 500 feet of a home daycare, the Seventh Circuit rejected a similar argument explaining that the residency restriction does not prevent an individual from establishing a home. It merely restricts geographically where they may do so. The Illinois Appellate Court reached a similar conclusion when analyzing a different but similar statute which prohibits child sex offenders from residing within 500 feet of a school. There, the defendant argued that his fundamental right to establish a home by living with his mother, who lived within 500 feet of a school, implicated a fundamental liberty interest. And again, the Illinois Appellate Court rejected that argument explaining that there is no fundamental liberty interest in residing in a particular home with a particular person within 500 feet of a school. Turning next to Mr. Koss' allegation that he has a fundamental property interest that is implicated here. The residency restriction at issue here went into effect in 2008. Mr. Koss found and purchased the land at issue here and then subsequently built a home on it in 2017. So at the time that Mr. Koss purchased the land here, the residency restriction had already been on the books for a number of years. So whatever property interest Mr. Koss had in that property was necessarily, within that understanding of his interest, included the understanding that he may need to move should a home daycare open up within 500 feet of that property. Mr. Koss also alleged that his rights to interstate and interstate travel were impacted by the residency restriction. However, the residency restriction does not prohibit Mr. Koss from traveling to his home. And in fact, he has not alleged that the residency restriction actually deterred any travel or that impeding travel is the primary objective of the residency restriction or of the communication law. Indeed, this court in People v. Adams understood that the purpose of SORA is to monitor movement of sex offenders by allowing ready access to crucial information. There are a number of other fundamental rights that Mr. Koss alleges are implicated. A majority of these were raised for the first time on appeal, and so they're not properly before this court as they were not presented in the first instance to the circuit court. For example, his right, fundamental right to practice his religion, a fundamental reputational right, or a fundamental right to be free from harassment or physical attacks. But again, none of those were alleged in the operative second amendment complaint in the circuit court, and so they are forfeited. And for the reasons explained in our briefs, those also do not constitute fundamental liberty interests for purposes of substantive due process. Without having identified a fundamental liberty or property interest, the statute is then reviewed under the highly deferential rational basis test. This test simply asks whether the state has a legitimate interest and whether there is a reasonable relationship between the interest and the means that the legislator chose to protect that interest. That test is easily satisfied here. Again, the state has a legitimate and compelling interest in protecting children. And there is a reasonable relationship between that interest and the residency restriction here. As the Seventh Circuit invest has noted, it's reasonable to assume that creating a buffer between where a child sex offender may live and where a home daycare may operate will prevent potential abuse by that child sex offender against children. So just creating space between a child sex offender and an area where children are known to congregate is reasonably related to the state's legitimate interest in protecting children. Counsel, what about this argument from Mr. Coff that, well, look, daycare center, you know, if they're just open in the daytime and he can go to this property in the daytime but he can't live there because he can't sleep there but they're not even supposedly open in the evening. How is that reasonable? So two responses and two points in response to that, Your Honor. First, under the rational basis test, the court simply asks, is there any conceivable set of facts in which the statute is reasonable? And certainly here in Illinois, home daycares may be licensed to operate at night. And so there is a conceivable set of facts in which a home daycare may be operating at night, which would mean it would be reasonable then to prevent a child sex offender from residing within 500 feet of that home daycare. I would also note, however, to the extent there's any information, there is actually no information about this daycare in the record. The circuit court here reached an apparent as applied constitutional finding in both its June and its February orders without any actual evidence in the record. So there is, to the extent that that analysis would turn on the actual evidence or facts about this particular daycare, that's simply not present in the record. Can I follow up on that question? Is it your understanding that this complaint is challenged in statute as unconstitutional, as applied, or as a facial attack? It does appear from the operative complaint that it is meant to be an as applied challenge. There are several places in which Mr. Coff alleges and states that this statutory scheme is unconstitutional as applied to him. So that does appear to be the thrust of the complaint. The circuit court here essentially turned the rational basis test on its head and ultimately concluded that the residency restriction here does not satisfy rational basis review because a child sex offender may live within 500 feet of a family that has children, but just may not live within 500 feet of a home that has children come into it via a home daycare. But that's not 100% accurate, is it? I mean, as long as somebody was caring for children, let's say they had two children, then that wouldn't qualify them as a home daycare, correct? Correct. Under the definition of home daycare as defined in the Child Care Act, that would not qualify them as a home daycare, correct. So in that situation, there would be no 500 feet rule, correct? Correct. In that instance, correct. So they could have 10 of their own children, two that they take care of, and there would be no violation. That is also correct. As far as this particular residency restriction goes, that would not be a violation. But the question is not whether or not the statute must be reasonable in every single application, but whether there is any conceivable set of facts where it is reasonable. And here, although the residency restriction may not protect every single child within the state of Illinois from living or being within 500 feet of the residence of a child sex offender, it does protect some children. And this court in People v. Adams did explain that the legislator need not prevent every single evil in one statute. So the fact that not every single child may be protected by the residency restriction does not mean that the residency restriction therefore fails the rational basis review test. You just indicated that the standard that is to be applied is that if there is any conceivable situation in which the statute could be seen as constitutional, then therefore it is constitutional. It sounds like the Salerno test, and isn't that about facial challenges? What's the standard when we're talking about an as-applied challenge? Well, certainly to the extent there is an as-applied challenge, that would necessarily require the court to look at the particular facts and circumstances of that individual. And this court has made clear that in order to do that, the circuit court, the court would need to look at evidence in the record, whatever that may be, evidentiary hearing, documentary evidence, anything that the court could look at as evidence to make the determinations as to this particular individual, the statute is unconstitutional. And again, here, to the extent Mr. Coff has brought an as-applied challenge, which based on the allegations and the complaint it does appear that he has attempted to do, there is simply no evidence in the record here. In fact, procedurally, the circuit court entered its final order in which it entered a permanent injunction in the exact same order in which it granted in part and denied in part the defendant's motion to dismiss. So this case was essentially at the pleading stage still when the circuit court entered its final order, again, without an opportunity for there to be any development of evidence in the record. So where does that leave us if we are of the opinion that there is some merit to this as-applied challenge? Does it need to go back for the circuit court to have a hearing to develop the record? Certainly, Your Honor. To the extent this court believes that there is merit to Mr. Coff's as-applied constitutional challenge, that would require a remand of some sort, whether it be a full remand or a limited remand, to allow the circuit court to entertain evidence, to make factual findings upon which it could make a conclusion or not that the statute was unconstitutional as applied to Mr. Coff. That's correct. But to this point, no evidence has been produced in the proceedings of the trial court. That is correct, Your Honor. So, again, to the extent there is an as-applied constitutional challenge here, there was simply no evidence in the record upon which the circuit court could have made an as-applied constitutional finding. I would note, additionally, when state defendants filed a motion to remand this matter back to the circuit court to allow there to be evidence to enter into the record on an as-applied challenge, from the circuit court's order entered in February, it does appear that Mr. Coff objected to the entry of additional evidence. So, to the extent that he has attempted to bring an as-applied challenge but is objecting to the entry of evidence, there certainly then just could be no as-applied constitutional finding. Turning next to Mr. Coff's procedural due process claim, that claim was properly dismissed by the circuit court. Plaintiff, again, has not identified a liberty or property interest entitling him to due process protections, so this claim must fail. And the United States Supreme Court has explained in Connecticut Department of Public Safety v. Doe that states are not barred by principles of procedural due process from drawing classifications based on convictions, as Illinois has done here, which requires the registration and residency restriction based on conviction alone. Finally, Mr. Coff's ex post facto claim was properly dismissed by the circuit court as well. This court has analyzed the SORA as well as the notification law and reached the conclusion that those statutes do not constitute punishment. And the Seventh Circuit in the Vasquez case analyzed this particular residency restriction and also concluded that it does not constitute punishment, even when looking at the various factors under the Mendoza-Martinez test and concluded that the residency restriction here does not amount to punishment. Indeed, the aim of the Seventh Circuit in Vasquez stated that the clear aim of the statute is to protect children from potential recidivism by child sex offenders. Unless the court has any further questions, for all those reasons and those stated in our briefs, we ask that this court reverse and vacate the portions of the circuit court's orders to the extent that they found the residency restriction violated Mr. Coff's due process and equal protection rights as applied to him. We ask that the court reverse and vacate the circuit court's finding that the residency restriction is spatially unconstitutional and otherwise affirm the portions of the circuit court's orders, granting in part the defendant's motions to dismiss. Thank you. Thank you very much. Mr. Hurwitz, on behalf of the Hampshire Police Department, you have two minutes. May it please the court, my name is Charles Hurwitz and I represent the Hampshire Police Department. My client is the reluctant cross-appellee in this case. The Hampshire Police Department was dismissed as a defendant in the circuit court and the police department did not appeal any aspect of the judgment of the circuit court. The police department was lumped in as a cross-appellee by Mr. Coff's cross-appeal and the issue was fully briefed by the Hampshire Police Department. A motion to dismiss was filed with the court and the court indicated it would take the dismissal of the police department with the briefs. I wrote to Mr. Coff. We've communicated and he actually agrees that he has waived any argument. He did not respond and he indicated he would verbally affirm that fact. For all these reasons, the Hampshire Police Department stands on its briefs before the court and the plaintiff's admission of waiver and respectfully requests dismissal from this appeal. Thank you. Thank you. Mr. Hoff, I hope I'm pronouncing that correctly. Yes, Madam Chief Justice. Mr. Hoff, can we start out with the Hampshire Police Department? What's the status of your claim related to that cross-appeal? Yes, Your Honor. I do agree with Mr. Hurst and everything he said and I did agree that the Hampshire Police Department should be dismissed from the negligence claim as there's no way that I can prove it and I did not address that in my brief. So they should be dismissed but they should stay on for declaratory and injunctive relief purposes. And you're talking about the ruling of the circuit court as it relates to that, that that would still be enforceable against them. Yes, Your Honor. And any other ruling on the other aspects of this case. There's, so may it please the court. My name is Martin Coff and I'm a plaintiff. And the first thing I'd like to address are a couple of inaccuracies from the defense and that is that number one, the circuit court found that on remand for the, I'll start with this. They filed a motion for remand for conforming to Supreme Court rule number 18 and for an evidentiary hearing. This court issued an order for remand for the purposes of conforming to Supreme Court rule only and it was only limited to that. Yet the defense still wanted to try and sneak one by and get an evidentiary hearing in there. It was against what this court had ordered. So I objected. The court never entertained my objection and the defense counsel even found, even said on record that once the court found that this was facially unconstitutional. Not unconstitutional as applied. It was found facially unconstitutional that no evidentiary hearing was required. And I address this in my briefs is that the court even preempted their argument on whether or not I waived my right to evidentiary hearing because the court said, Mr. Coff, I want you to know that this is my decision and my decision only basically. It's not verbatim, but it's pretty, pretty close. Now, I'd like to address the residency restrictions quickly. First off, the defendants are incorrect that property does not implicate a fundamental right. This court has ruled multiple times over decades that property is a fundamental right and it's also a liberty right. It's property and liberty rights. How somebody is able to use and enjoy their homes. And that's in Hannafin, which I cited in my brief. And it's also in Building Corp v. City of Chicago, where this court had actually said that that right, that the right to use one's property and enjoy their property is not only a right, but it's also a right. It's not only a property right, but a liberty right and was enshrined in the law in this state before the Constitution was even written. Excuse me, I'm a little nervous. So I believe that the court got that wrong on only saying the rational basis test applied, but I found it right that it produces absurd results. But even beyond what the court found, I still offer and present the equal protection claim that I fought throughout this whole argument about is that the residency restrictions create four different classes of people who were once convicted of a sex offense. There's people who bought the home before 1999 that are exempt from all residency restrictions. And there are people who bought the home after 2008, like myself, who any time any restricted location opens up within 500 feet, I have to move. So I have no property rights whatsoever. I'd only have the same property rights as somebody in 1999 who could go out and commit an offense today, be convicted for that offense today, yet that person could still live next door to the victim because of when they bought their house. So it creates four different classes. So if in an equal protection claim, the court must look at what are the evils sought to be remedied. Well, if the evils are sought to be remedied are to protect children, as the defendants claim, then all persons convicted of a sex offense against a child would have the same rights as me. They would be forced to move any time a restricted location opened up within 500 feet. But there are some people that are exempt. And there's two classes in between there, which I addressed in my briefs as well. I'd like to, if there's no questions on the residency restrictions, I'd like to move on to irrebuttable presumption. And I think that the defendants misapply the rationale behind irrebuttable presumption. And they claim that it's only procedural due process. And that's what the circuit court seemed to have suggested as well. But I've cited four cases in my opening brief, Stanley, Carrington, Lafleur, and Flanders. And in Stanley v. Illinois, the Supreme Court, there was a case about an unwed father who was unfit to rear his children. And that was a statutory classification. And that, the court not only applied like an equal protection, but also a substantive due process and a procedural due process. In Carrington, that was a military voting rights down in Texas. And that was straight equal protection. In Lafleur, that was substantive due process and procedural due process. That was a teacher who is six months pregnant, must take leave. And in Flanders, the client, that was in-state tuition rates. And that was procedural and substantive and equal protection. So now, the state says and Illinois courts have all found that these statutes, the purpose of these statutes is to protect children. Okay, so now, here I am. It's been 21 years, almost 21 years since my conviction. I have been totally offense-free, not even a moving violation. But yet, they still say that I'm dangerous. Now, I think it was Lesher v. Trent, and that was from the Appellate Court Fifth District. It says that the scheme has a purpose of keeping track of those once convicted. Therefore, the scheme has a purpose of, I say the scheme has a purpose of surveillance, control, and supervision of me. But the court said, and this is notable, it said if a sex offender remains at large for 10 years without reoffending, it seems reasonable to conclude that he is unlikely to reoffend. Because that's not achieving the purpose of the statute is in protecting children. There's nothing to protect from. The state has even admitted that in their sex offender task force reports, that somebody who's been offense-free for 10 years, their recidivism rate is the same as anybody else in this courtroom. And that's at 1.5%. It's statistically impossible to be 0%. Just take the number of sex offenses by the population. So nobody can be a 0%. So I have the same risk as anybody else. But yet I'm still subject to all these laws that keep on changing and that are retroactive. And pretty much every court has said they're retroactive, including Smith in the U.S. Supreme Court. They said the laws are retroactive. Now, I want to touch base on something that I forgot. The defense had mentioned Vasquez. Now, the court in Vasquez, 7th Circuit, ignored the, they compared the, they said that the Illinois Residency Statute is similar to the registration statute that issued in Smith. But Smith explicitly stated registrants were free to live where they wanted and move about the community freely as well. And I claim that, with all due respect to the 7th Circuit, that they just got it wrong by stating that we didn't have property rights. Because Illinois decisions have all said that enjoyment of a property is a liberty and a property right. So if I'm no longer a danger to society, then what's the purpose of me still being on the registry? Well, there can only be one purpose, and that's punishment. That's punishment. And because it either has to be dangerous or it has to be, it's punishment. I mean, there can't be any other reason for it. So that would mean that all the laws since 2003 would fall under ex post facto, all the changes. For example, the change in the law that I could travel for 10 days without having to notify, and then it's 5 days, and now it's 3 days. The fact that the registration fee changed tenfold from $10 to $100. And I'd like to address that quickly. The registration is a fine for three reasons. The arson registry and the violence against youth registry, their fees are $10. So the maintenance has already been established at $10. If one cannot afford the $100 registry, then they must perform 20 hours of community service. The proceeds from the scheme's fee go to the following. It goes to the Attorney General's Sex Offender Awareness, Training, and Education Fund to alert and educate public victims and witnesses. Now in Muller v. Ramish, 7th Circuit in 2014, they addressed this issue exactly. They said that compensation for a service, a fee is a compensation for a service provided to or for a cost imposed by the person charged. A fine is equal to a fee that bears no relation to the cost for which it was intended to compensate. So those categories that they added in there where the money goes to, that doesn't go towards compensating for the cost of the service. That goes more towards like a court fine where it pays restitution for victim advocates and things as such. I'd also like to say that I'd like to compare really quickly the probation for all and the scheme. First, both are a direct result of a criminal conviction. Both are codified under Illinois Compiled Statutes, Chapter 730, which is entitled Corrections. Both must report to a law enforcement agent. Those under the scheme must do so annually but can be called in for four more times, equaling five a year, unless you are homeless like I was. Then it's a weekly. And then all the other restrictions that you have to go in, like any change, have restrictions on where they can live and be forced to move at any time. Both have restrictions on where they can go. Both have edges verification checks. Both are required to disclose personal information, email, phone, scars, tattoos. I already addressed the fines and community service. And both will face criminal justice penalties if not compliant. Now, to finish up my argument, this scheme has become a trap to ensnare someone such as myself who committed a sex offense in the past and who have already served their sentences. It's been almost 18 years since my probation was up. And this case is the ultimate example. I mean, I did my due diligence. I contacted two law enforcement agencies. They both said the address was compliant. And their mistakes made me noncompliant. So their mistakes have cost me a little ballpark, about $35,000, my wife, possibly my kids due to DOMA, plus losing my house, causing bankruptcy. Oh, and I'll be sleeping in my truck. And all this to protect society from someone who has proven to be rehabilitated. And every peniological study out there will show that those factors, they're all factors in reducing recidivism. So that just begs the question, I mean, what's the purpose of the scheme if you have somebody who's successful and who has changed their lives for the better? And then you're just going to take all that success away because of your mistake. It just boggles my mind. And for that, I'd like to thank you for listening to my arguments and dealing with my extremely long briefs. And Madam Chief Justice, if I may, being pro se, I'd just like to thank everybody with the clerk's office and everybody with the marshal's office today with helping me out and everything. The clerk's office did a wonderful job, so I'd just really like to thank them. Thank you all. Thank you. Rebuttal? Thank you, Your Honor. I have a few points on rebuttal. First is to address this court's order regarding the remand to allow the circuit court to make recordings and findings in compliance with Rule 18. As explained in our motion filed before this court asking for that remand, Rule 18 has several different components that circuit courts must comply with in order to find a statute unconstitutional. Included within that Rule 18 requirement is a statement as to whether the circuit court is finding that statute unconstitutional as applied or on its face. And this court has made clear repeatedly that in an as-applied constitutional finding, there must be evidence in the record upon which a court can make that conclusion. And Mr. Coff explained that there was an admission from the defendants below about there not being facts needed. And I believe the statement made before the circuit court was simply that to the extent the circuit court was finding the statute facially unconstitutional, that would not be dependent on the facts of this particular case. But otherwise, to the extent that Mr. Coff was proceeding with an as-applied challenge, that that would require evidence in the record. I don't have it right in front of me, but doesn't the court's final order say the court was finding the statute facially unconstitutional as applied to Mr. Coff? Yes. The final February 2022 order from the circuit court does appear to be basing its decision both as a facial finding and potentially, again, still as an as-applied. I mean one sentence. Yes. Facially unconstitutional as applied. As applied, right. So again, to the extent that there is an as-applied finding here, that still would require evidence in the record. Again, addressing, to briefly address Mr. Coff's arguments regarding the property interest aspect of his challenge here. Again, the Seventh Circuit in Vasquez, when analyzing this exact same statute, explained that whatever property interest an individual may have in property purchased, after this amendment went into effect in 2018, excuse me, in 2008, that property interest is necessarily understood to include the criminal code, which would prohibit Mr. Coff from living within 500 feet of a home daycare should one open within 500 feet of his home. And Mr. Coff argued about this property interest in the context of an equal protection challenge, and as he argued below and again before this court, that the equal protection challenge should be understood to be based on different classifications of child sex offenders, depending on when they purchased their home. But this court has made clear in Calkins, in the Calkins case very recently, that the fact that the legislature may take into account expectation, an individual's reliance expectation, based on property owned before a statute went into effect, does not doom the statute for equal protection purposes. Again, clearly, still here, the purpose and aim of the statute is to protect children and to create, as the Seventh Circuit called it, a buffer between where a child sex offender may live and where, an area where children are known to congregate or be. And again, under the rational basis test, the question is simply whether there is a reasonable relationship between the state's chosen method and the state's legitimate interest. And again, creating that buffer satisfies that test. And again, even if that means that there may be some instances in which a child sex offender was living within 500 feet of a home with children in it, that does not mean that the statute necessarily fails. Again, clearly still the aim is to protect children, and some children are being protected by the statute. Turning next to Mr. Coff's arguments regarding the irrebuttable presumption challenge that he raises, and he argues that this applies in the context not only of his procedural due process claim, but also as to his other substantive due process and equal protection claims. However, in any event, under whatever category an irrebuttable presumption challenge may arise, it is not a stand-alone constitutional claim. It's a constitutional claim. In the cases that Mr. Coff cited, where irrebuttable presumptions were raised as arguments, in cases involving fundamental rights to raising care for children, voting rights, rights to interstate travel, again, there was a fundamental constitutional right that was being impacted by an irrebuttable presumption. So without a fundamental constitutional right identified by Mr. Coff, his irrebuttable presumption arguments simply can't stand. Mr. Coff also made several statements before this court today about that he has not reoffended, that there is no risk that he will reoffend, but again, these are statements that he has made not under oath, and they're based on unverified allegations in a complaint. So to the extent there are any particular circumstances regarding Mr. Coff, there's just simply no evidence in the record to support those unverified allegations which do not constitute evidence. Would they be relevant if we did have evidence as to that? Would it be relevant if there was? Certainly in an as-applied constitutional challenge, it very well may be relevant whether or not an individual has reoffended, or if there is any evidence about their likelihood of reoffense, that certainly may be relevant. Mr. Coff also mentioned statistics and data from studies about recidivism rates among child sex offenders, but again, this court has explained that the legislature is in the best position to consider policy, and so to the extent that those studies are relevant, and to the extent there may be even conflicting studies about recidivism rates, the legislature is in the best position to consider those studies and to consider whether there may be a different way to achieve its purpose with children. Mr. Coff also took issue with the Seventh Circuit's decision in Vasquez, which again, analyzes this particular statute, including looking at all of the Mendoza-Martinez factors, and explains that he believes that the Seventh Circuit got it wrong. But again, looking at each of those particular factors, even considering the residency restriction, I'll still point to the conclusion that this residency restriction does not constitute punishment. May I ask you a question in your last few minutes here? I understand that you're going to say that there was not an evidentiary hearing, there were only allegations in the complaint, and certainly arguments here today regarding some of the details here. But I wonder if you could respond to the argument that Mr. Coff made, that it's in a sense an equitable argument, perhaps an estoppel argument, that he in fact contacted the appropriate law enforcement agencies to receive their guarantee that he could in fact go forward to purchase property and build a house, and now they've made a mistake and therefore he's been financially ruined. It seems to be an estoppel argument. How would you address that? If there was in fact evidence to support all of that. If there was evidence to support all of that. My response to that, Your Honor, would be that it is still the individual's obligation to ensure that he is compliant with the law. The Illinois Criminal Code here lists out specifically all the areas where a child sex offender is prohibited from living within 500 feet. Again, as you noted, there is no evidence to this effect, but I would note that the allegations, which are only allegations, are vague as to exactly what he asked and what was told to him by these various different agencies. So it's not clear exactly what he asked and what he was told. But nonetheless, Mr. Coff is charged with knowing the law, and the statute here makes clear, the Illinois Criminal Code makes clear, the specific areas in which Mr. Coff is prohibited from living. So you say this is the burden on the individual. How is an individual to know the business uses of all the property within a certain area? Well, I would note that there is an ability to search online on the DCF website to search for home daycares within a particular area. So it is possible to find within any particular area whether there are any licensed home daycares in that area. So that is one possibility, certainly. Does estoppel apply to the statute as an applied challenge? Your Honor, I don't know that I'm prepared to answer that question today, but I'd be happy to submit a supplemental brief if the Court would like. My time is nearly done, but I would just like to note, again, in responding to Mr. Coff's argument that the Seventh Circuit in Basque has got this analysis wrong when looking at the Mendoza-Martinez factors. I see that my time is up. And for all those reasons stated in our brief, we ask that the Court partially vacate and partially affirm. Thank you. Thank you very much, Ms. Schneider, Mr. Hervas, and Mr. Coff. Thank you for your arguments. Thank you for your presence here today. This case, which is Agenda No. 5, No. 127-464 and 127-487, will be taken under advisement.